IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LATEEFAH JOHNSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DAWN CHAMBERLAIN, et al. | : | No. 07-3137 |

**MEMORANDUM**

LOWELL A. REED, JR., Sr. J.                                    August 19, 2010

Presently before this Court is a counseled petition for writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 by Lateefah Johnson ("Petitioner") (Docs. No. 1 and 14),

the Respondents' response thereto ("Response") (Doc. No. 7), and Respondents'

supplemental response ("Supplemental Response") (Doc. No. 34). Petitioner is currently

incarcerated in the State Correctional Institution in Muncy. For the reasons that follow,

the petition will be denied.

**FACTS AND PROCEDURAL HISTORY:**

The relevant facts, as set forth by the Pennsylvania Superior Court, are as follows:

> On Thanksgiving Day of 1998, [Petitioner] invited numerous guests to her
> residence in Philadelphia to celebrate the holiday. Among these guests
> were [Petitioner's] two [2] [fourteen] 14 year old cousins, Adrian Travers
> and Joseph Sandonato, and [Petitioner's] boyfriend, Derrick Myrick. At
> approximately 9:00 p.m. that evening, Myrick returned to the house with an
> expensive pair of boots purchased for him by another woman. This led to a
> heated verbal and physical altercation between [Petitioner] and Myrick. In
> the course of the altercation, [Petitioner] pulled a 9-millimeter Luger pistol
> on Myrick and threw bleach in his face. Myrick attempted to leave, but
> [Petitioner] pursued him. Myrick's brother-in-law eventually restrained
> [Petitioner] and Myrick was able to leave on foot. [Petitioner] soon
> followed, using her car to search for Myrick. Numerous witnesses testified
> at trial that she returned long enough to dismiss her guests and then resume

her search.  According to witnesses, [Petitioner] did not return to the residence again until midnight, at which time she packed some belongings, left the keys to the house with her family, and proclaimed that she was leaving and would not ever be returning.

A passerby discovered Myrick's body the next morning, approximately six [6] blocks from the Johnson residence.  Myrick's body contained several bullet wounds.  The fatal bullet had struck him in the back, piercing his spine, lung and aorta.  [Petitioner's] pistol and several shell casings were found at the crime scene.

Two [2] days later, police found [Petitioner] in the psychiatric wing of a New York hospital.  [Petitioner] confessed to having the altercation with Myrick at the residence, and later confronting him and shooting him only a few blocks from her residence before fleeing to New York.  [Petitioner] claimed that, after the first confrontation, she was on her way to take Travers and Sandonato to the bus station when she saw Myrick and confronted him a second time.  According to her statement, the encounter escalated into a physical altercation, and she shot him to make him stop hitting her.  [Petitioner] told police that they should interview Travers and Sandonato and tell her cousins that she wanted them to tell the truth.  The police interviewed Travers and Sandonato who each signed written statements in which they plainly stated that they were with [Petitioner] and saw her shoot and kill Myrick.

Commonwealth v. Johnson, 817 A.2d 1179,  No. 1500 EDA 2002, at 1-4 (Pa. Super. Dec, 13, 2002) (unpublished memorandum), attached as Exhibit "A" to Response.

On November 3, 2000, a jury before the Honorable David N. Savitt, Court of Common Pleas of Philadelphia County, found Petitioner guilty of first degree murder and related weapons offenses.  Judge Savitt sentenced Petitioner to a term of life imprisonment.  On direct appeal, the Pennsylvania Superior Court affirmed the judgment of sentence on December 13, 2002.  Commonwealth v. Johnson, 817 A.2d 1179,  No. 1500 EDA 2002, at 1-4 (Pa. Super. Dec, 13, 2002) (unpublished memorandum), attached

as Exhibit "A" to Response. The Pennsylvania Supreme Court denied Petitioner's request for allocatur on July 15, 2003. Commonwealth v. Johnson, 829 A.2d 311, 76 EAL 2003 (Pa. Jul. 15, 2003) (table).

On July 8, 2004, Petitioner filed a counseled petition for post-conviction relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. Ann. § 9541, et. seq., asserting eleven claims of ineffectiveness of trial counsel. The PCRA court dismissed Petitioner's petition on November 17, 2005. On April 18, 2007, the Superior Court affirmed the denial of PCRA relief. Commonwealth v. Johnson, 928 A.2d 1124 (Pa. Super. 2007) (table); No. 3477 EDA 2005 (Pa. Super. April 18, 2007), attached as Ex. "B" to Response. Petitioner filed a petition for allowance of appeal in the Pennsylvania Supreme Court which was denied on August 28, 2007. Commonwealth v. Johnson, 931 A.2d 656, No. 227 EAL 2007 (Pa. Aug. 28, 2007) (table).

On July 2, 2007,[1] Petitioner filed a petition for a federal writ of habeas corpus. Counsel was appointed to represent Petitioner (Doc. No. 9) and an amended petition was filed on June 2, 2008 (Doc. No. 14) advancing the following claims:

    1.       trial counsel provided ineffective assistance when he failed to adequately prepare to litigate a motion to suppress Petitioner's confession and appellate counsel was ineffective for failing to argue trial counsel ineffectiveness;

---

[1]Generally, a pro se petitioner's habeas petition is deemed filed at the moment she delivers it to prison authorities for mailing to the district court. Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)). Petitioner signed her habeas petition on July 2, 2007; therefore, I will assume that she presented her petition to prison authorities on that date.

2.      trial counsel was ineffective for failing to request a continuance to secure hospital records before the hearing on the motion to suppress Petitioner's confession;

3.      trial counsel was ineffective for failing to argue applicability of New York state suppression law in relation to Petitioner's confession;

4.      trial counsel was ineffective for failing to raise a diminished capacity defense and for failing to properly investigate to present such a defense; and

5.      appellate counsel was ineffective for failing to argue that the trial court's denial of Petitioner's motion to suppress was erroneous under New York state law.

Respondents have filed responses asserting that Petitioner is not entitled to federal habeas relief because her claims are without merit.

**DISCUSSION:**

A.      **Standard of Review**

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts v. Vaughn, 228

F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S. 362 (2000). In Williams, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." 529 U.S. at 412-413 (quoted in Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000)). The Court in Williams further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411).

## II. Petitioner's Claims

### A. Claim One: Ineffective Assistance of Trial Counsel for Failure to Adequately Prepare to Litigate a Motion to Suppress Petitioner's Confession

Petitioner first claims that trial counsel rendered ineffective assistance by failing to adequately prepare to litigate a motion to suppress her confession. Claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687. Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

"It is past question that the rule set forth in Strickland qualifies as 'clearly

established Federal law, as determined by the Supreme Court of the United States.'"

Williams, 529 U.S. at 391. Thus, Petitioner is entitled to relief if the Pennsylvania courts' rejection of her claims was either "contrary to, or involved an unreasonable application of," that established law.

Specifically, Petitioner asserts that trial counsel provided ineffective assistance when he failed to prepare to litigate a motion to suppress a confession given while Petitioner was hospitalized in a mental institution. The trial court judge stated the following in denying trial counsel's motion to suppress Petitioner's confession:

> [T]he court finds that [Petitioner] was not in custody as required or as the cases have held pursuant to Miranda and its progeny with respect to the Constitutional requirements of obtaining a statement.
>
> In this instance [Petitioner] was in a hospital but it was a hospital that she chose to go to, no one put her there, certainly not the police. The police called in advance. They were expected. There was a conversation with the doctor who arranged it and [Petitioner] was free to leave at any time. As a matter of fact, the testimony is that under certain circumstances during the questioning she did indeed leave. Accordingly, there is no reason to suppress the statement on constitutional grounds.
>
> Now, with respect to voluntariness, it is true [Petitioner] was in a mental institution and the testimony seems to indicate that she was subject to certain medication. However, here again the police were expected, the doctors were aware of it and arranged it so there didn't seem to be or there is not on this record any medical reason that she could not converse intelligently with the detectives. The record discloses that she was responsive, that she was not mistreated, that she wanted to speak, that she was friendly, that she was cooperative, that she was coherent, that she took a phone call in the midst of the conversation and the substance of the statement shows coherence as well.

(N.T. 11/2/2000, at 1107-8).

In reviewing this claim the state court noted:

> Johnson contends her confession was the product of custodial interrogation, and, therefore, she should have been given her *Miranda* warnings prior to the police questioning her. Intertwined with this contention is Johnson's argument that trial counsel was ineffective in failing to secure and introduce into evidence Johnson's psychiatric records, which would have revealed that Johnson could not have reasonably believed that she was free to leave when police questioned her and she did not make statements voluntarily. Johnson asserts that appellate counsel was ineffective in failing to raise the ineffective assistance of trial counsel on direct appeal.

> The [c]ourt presumes that counsel acted in his client's best interest and, as an appellant[,] Johnson carries the burden of proving otherwise.

> ***

> Here, a review of the certified record reveals that trial counsel sought to suppress Johnson's statements on the basis she was subject to custodial interrogation without being properly *Mirandized* and her statements could not have been voluntarily made due to her psychiatric condition. That is, during trial, the trial court asked the Commonwealth whether they would be introducing evidence of statements Johnson had made to police. The Commonwealth indicated affirmatively. At this point, trial counsel indicated that, although he was advised prior to trial that the police had spoken to Johnson at the psychiatric hospital, he had not been advised of the substance of the conversation and was not provided with any written notes until "this morning." The trial court asked whether he was going to move to suppress Johnson's confession, and he replied affirmatively, indicating that Johnson was under at least six psychiatric drugs when police questioned her. The next day, on November 1, 2000, the trial court held an extensive hearing on trial counsel's motion to suppress. Specifically, the issues were whether Johnson's statements were the product of custodial interrogation such that she should have been given her *Miranda* warnings prior to questioning and whether Johnson's statements were the product of her free will due to her psychiatric condition. Therefore, we find no merit to Johnson's claim that trial counsel was ineffective in failing to file a motion seeking to suppress her statements on the basis she was subjected to custodial interrogation without being provided with her *Miranda* warnings and her statements were not a product of her free will.

Commonwealth v. Johnson, 928 A.2d 1124 (Pa. Super. 2007) (table); No. 3477 EDA 2005 (Pa. Super. April 18, 2007) (citations omitted), attached as Exhibit "B" to Response.

Upon review of the notes of testimony from the suppression hearing of November 2, 2000, (N.T. 11/1/2000, at 1036-1103), the trial court judge's explanation as to why he denied Petitioner's motion to suppress (N.T. 11/2/2000, at 1106-1108) and the opinion of the Superior Court, it is clear that the state court's application of the law is reasonable. Petitioner's counsel argued that the interrogation at the hospital was both involuntary and custodial and therefore Petitioner's statements should be suppressed under Miranda v. Arizona, 384 U.S. 436 (1966)[2]; (N.T. 10/31/2000, at 798-802). While it is a fact that trial counsel did *not* have copies of the hospital records prior to the suppression hearing, counsel was aware that Petitioner was medicated while in the hospital and he did inform the trial court judge that Petitioner was "on Cogentin and five other drugs." (N.T. 10/31/2000, at 798). Trial counsel also argued that it was "inconceivable" and "intellectually dishonest" for the detectives who questioned Petitioner to assert that the interrogation was voluntary and non-custodial. (N.T. 11/1/2000 at 1087). Each of these arguments were carefully considered by the trial court judge and, as discussed above,

---

[2]It is well established that once an accused is "in custody" of law enforcement officials; he or she must be informed of the constitutional right to remain silent and to have counsel appointed; an accused's waiver of these rights, to be effective, must be voluntarily, knowingly and intelligently made. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Because questions such as the length and circumstances of the interrogation often require the resolution of conflicting testimony of police and defendant, state-court determinations of these issues are entitled to the presumption of correctness outlined in the federal habeas statute under 28 U.S.C. § 2254(e)(1). See Miller v. Fenton, 474 U.S. 104, 117 (1985).

ultimately rejected. As such, I find no merit to the claim that trial counsel provided

ineffective assistance of counsel for failing to prepare to litigate the motion to suppress.

I conclude that the Superior Court's adjudication of Petitioner's claim did not result

in a decision that was contrary to, or an unreasonable application of, <u>Strickland</u>.

Therefore, Petitioner's claim must be denied.

**B.      Claim Two: Ineffective Assistance of Trial Counsel for Failure to Request a Continuance to Secure Hospital Records prior to the Argument on the Motion to Suppress Petitioner's Confession**

Petitioner next claims that trial counsel rendered ineffective assistance by

failing to request a continuance to secure her hospital records prior to arguing his motion

to suppress her confession. Upon review of the notes of testimony it is clear that both the

prosecution and the defense attempted to obtain these medical records but were

unsuccessful.

> The Court:     Now, do you plan on calling witnesses from New York on the question of voluntariness and the physical and mental condition of [Petitioner] at the time the statement was made or don't you? If you don't, that makes it easier.

> Defense:     Well, I had, Judge, and I have been endeavoring to get the records from the hospital. I just haven't gotten them yet and I haven't talked to a doctor, but I have been trying to get the medical records from the hospital.

(N.T. 11/1/2000, at 1097-8).

> The Court:     It is up to the Commonwealth to prove that it was voluntary. In other words, you did not introduce any testimony that would indicate that even though in a medical institution that [Petitioner] did indeed have the capacity to make a voluntary statement.

10

| | |
|---|---|
| Commonwealth: | Well, your Honor, as I'm sure you know and appreciate, even though we subpoena medical records, they will not release them without a defendant's authorization when she's in a mental hospital. |
| The Court: | Oh, they release them to a subpoena in a murder case, believe me. |
| Commonwealth: | Well, they didn't respond to ours. I have it right in my file. |

(N.T. 11/1/2000, at 1097-8).

In reviewing this claim the state court noted:

> Johnson has failed to demonstrate that she was prejudiced by trial counsel's failure to introduce Johnson's psychiatric records into evidence during the suppression hearing. For instance, Johnson argues the psychiatric records would have revealed that Johnson attempted suicide and she was heavily medicated, placed in restraints, and prevented from leaving the facility during the course of her hospitalization. However, the trial court was substantially made aware of these facts during the suppression hearing. Moreover, our review of the psychiatric records reveals that, on December 13, 1998, the day the police questioned Johnson, during the morning hours, a nurse observed Johnson walking around the hospital, she was pleasant to the nurse, and she gave no indication of feeling suicidal. The psychiatric records further reflect that, when the police arrived, Johnson's behavior was controlled, she indicated she was "just chilling" as she played cards with other patients, and she denied having thoughts of hurting herself or others. In the late afternoon, Johnson ate her dinner and scheduled snacks and visited with her mother and uncle. During the evening, Johnson was observed sleeping. Simply put, the psychiatric record entries for December 13, 1998 do not support Johnson's assertion that she was incapable of giving a voluntary statement to the police. Therefore, we conclude Johnson has failed to demonstrate she was prejudiced by trial counsel's failure to introduce the psychiatric records into evidence[.]

> [J]ohnson also claims trial counsel was ineffective in failing to request a continuance in order to secure the psychiatric records so that the records could have been introduced during the mid-trial suppression hearing and

> appellate counsel was ineffective in failing to raise this issue on appeal.
> As discussed supra, Johnson has failed to prove the absence of the
> psychiatric records prejudiced her, and therefore, neither trial nor appellate
> counsel can be ineffective in this regard.

Commonwealth v. Johnson, 928 A.2d 1124 (Pa. Super. 2007) (table); No. 3477 EDA

2005 (Pa. Super. April 18, 2007) (citations omitted), attached as Exhibit "B" to

Response.

It is clear that the state court's application of the law is reasonable. The state

court reviewed the available medical records and found that Petitioner was not

prejudiced by the fact that the complete medical records could not be obtained by

counsel. "[A] court need not determine whether counsel's performance was deficient

before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies." Strickland, at 697. "If it is easier to dispose of an ineffectiveness claim

on the ground of lack of sufficient prejudice that course should be followed." Id.

Further, as discussed above, trial counsel made the trial court aware, during the

suppression hearing, of the fact that Petitioner was a patient in a mental heath facility

and that she was medicated. See N.T. 10/31/2000, at 798. As such, I conclude that the

Superior Court's adjudication of Petitioner's claim did not result in a decision that was

contrary to, or an unreasonable application of, Strickland. Therefore, Petitioner's claim

must be denied.

**C.     Claims Three and Five:  Trial Counsel was Ineffective for Failing to
        Argue the Applicability of New York state Suppression law in
        Relation to Petitioner's Confession and Appellate Counsel was**

**Ineffective for Failing to argue that the Trial courts Denial of Petitioner's Motion to Suppress was Erroneous based on New York State Law**

In her next claim, Petitioner asserts that trial counsel was ineffective for failing to argue the applicability of New York state suppression law in relation to her confession. This claim was addressed by the state court as follows:

> Johnson claims trial counsel was ineffective in failing to argue during the suppression hearing that the admissibility of her confession should be determined by the application of New York's laws since she was interrogated by police in a New York psychiatric hospital. Assuming, arguendo, trial counsel should have made such an argument, we conclude Johnson has failed to demonstrate that she was prejudiced by the introduction of her confession at trial.
>
> [E]ven absent the introduction of the confession at trial, there was overwhelming circumstantial evidence establishing beyond a reasonable doubt that Johnson committed the crimes for which she has been convicted. Therefore, we cannot say that the outcome of her trial would have been different had trial counsel successfully litigated his motion to suppress Johnson's confession, and appellate counsel cannot be ineffective on this basis.

Commonwealth v. Johnson, 928 A.2d 1124 (Pa. Super. 2007) (table); No. 3477 EDA 2005 (Pa. Super. April 18, 2007) (citations omitted), attached as Exhibit "B" to Response.

The state court found that Petitioner was ultimately not prejudiced by the admission of her confession, because even without the confession, the evidence supported her conviction. As such, the court determined that this claim failed due to Petitioner's inability to meet the prejudice prong under Strickland. I find that the state

court's application of the law is reasonable. The evidence supporting Petitioner's

conviction was discussed at length by the state court on direct appeal and adopted by the

Superior Court on collateral appeal as follows:

> [T]he Commonwealth called a crime scene investigator, a Highway Patrol officer, a ballistics expert, a police detective, the Assistant Medical Examiner, and a homicide detective. In addition, the Commonwealth called three witnesses who were present at Johnson's residence on the night of the homicide: Krisena Tyrel Myrick-Lloyd, the victim's brother; Stephen Edward Lloyd, Jr., the victim's brother in law; and Channel Vest, a friend of the victim. All three of these witnesses testified that Johnson and Myrick engaged in a heated altercation that night. The Commonwealth introduced testimony that the fight erupted because Johnson was angry that Myrick was wearing a new pair of boots he received as a gift from his other paramour. All three witnesses testified that they were present when the altercation escalated from yelling and screaming to the point where Johnson physically threw things at Myrick, pulled a gun on him, and splashed bleach in his eyes. All three witnesses positively identified the gun Johnson pulled at the house as the one used to kill Myrick. They further testified that when Myrick attempted to leave, Johnson attempted to pursue Myrick and would have done so had guest Stephen Lloyd not restrained her. Krisena and Stephen Lloyd testified that when Stephen released Johnson, she rushed to the car wearing only a T-shirt and boxer shorts and circled the block several times looking for Myrick. According to testimony by Stephen Lloyd and Channel Vest, the older cousin, Sandonato, picked up the gun while Stephen Lloyd was grappling with Johnson to restrain her. Numerous witnesses further testified that Johnson returned to the house ten [10] minutes later and told all of the guests to leave. Testimony by Stephen Lloyd and Channel Vest established that Johnson then drove away with Travers and Sandonato in her car and that Sandonato was the last person seen with the gun. According to all three witnesses, Johnson returned alone at about midnight, approximately 45 minutes after leaving with Travers and Sandonato. According to this testimony, Johnson picked up her belongings and her "piggy bank" and told her guests that she was leaving and would not be coming back.

***

Officer Avon Wilson testified that he found the murder weapon at the scene of the

crime. Officer Bottomer identified five shell casings found at the scene as

coming from that weapon. Dr. Gregory McDonald, Assistant Medical Examiner for the City of Philadelphia and supervising pathologist in the case, testified within a reasonable degree of medical certainty that this was a homicide and that Myrick was shot in the back. According to Dr. McDonald's testimony, the bullet that killed Myrick was fired from a distance of more than three feet, and there was no evidence that the bullet had ricocheted off anything before entering the body.

 Commonwealth v. Johnson, 817 A.2d 1179, No. 1500 EDA 2002, at 1-4 (Pa. Super. Dec, 13, 2002) (unpublished memorandum), attached as Exhibit "A" to Response. As such, Petitioner's claim that trial counsel was ineffective for failing to argue the applicability of New York state suppression law is without merit. Further, to the extent that Petitioner alleges ineffective assistance of appellate counsel for failure to challenge trial counsel's ineffectiveness, it is well established that counsel cannot be deemed ineffective for failing to raise a meritless claim.

Contrary to Petitioner's assertions, New York state law is not necessarily applicable in this case. Pennsylvania has adopted a "flexible choice of law rule which weighs the interests sister-states may have in the transaction." Commonwealth v. Eichinger, 915 A.2d 1122, 1133 (Pa. 2007); see also McCrossan v. Wiles, 2004 WL 1925057 (E.D. Pa. 2007) (describing the choice of law rules used in Pennsylvania). This case involves a crime committed in Pennsylvania, against a victim who lived in Pennsylvania, perpetrated by a Pennsylvania resident, and being investigated by law enforcement officers from Pennsylvania. The sole connection to New York was established when Petitioner admitted herself to a New York hospital. As such, Pennsylvania law should provide the governing law. In any event, Petitioner does not

cite to any authority that reveals any significant conflict between the suppression laws of New York versus Pennsylvania. Consequently, I conclude that counsel cannot be found ineffective for failing to raise a meritless argument and the Superior Court's adjudication of Petitioner's claim did not result in a decision that was contrary to, or an unreasonable application of, <u>Strickland</u>. Therefore, Petitioner's claim must be denied.

    **D.**    **Claim Four: Ineffective Assistance of Trial Counsel for Failure to Obtain Medical Records to Support a Diminished Capacity Defense**

In her fourth claim, Petitioner asserts that trial counsel provided ineffective assistance by failing to adequately investigate and prepare a diminished capacity defense. "In order to resolve the ineffectiveness claim, we must consider [Petitioner's] counsel's conduct within the context of Pennsylvania law regarding the defense of diminished capacity." <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284, 295 (3d Cir. 1991). "Pennsylvania recognizes the defense to show that a defendant did not have the capacity to possess the state of mind required by the legislature to commit a particular degree of the crime charged." <u>Id.</u> (citing <u>Commonwealth v. Walzack</u>, 360 A.2d 914, 919-20 (Pa. 1976)). "Evidence of diminished capacity is admissible at the guilt phase of trial and jury finding diminished capacity may not find the defendant guilty of first degree murder, but it may find the defendant guilty of third degree murder." <u>Zettlemoyer</u>, 923 F.2d at 295. Under Pennsylvania case law "to prove diminished capacity, only expert testimony on how the mental disorder affected the cognitive functions necessary to form the specific intent is relevant and admissible." <u>Id.</u> (citing <u>Commonwealth v. Terry</u>, 521 A.2d 398, 404 (Pa.

1987); Commonwealth v. Davis, 479 A.2d 1077, 1080 (Pa. Super. 1984)).  Evidence of specific intent to kill may disprove the defense of diminished capacity.  Id. at 295-96 (citing Commonwealth v. Tempest, 437 A.2d 952, 955 (Pa. 1981)).

Respondent asserts that the state court reviewed this claim with the benefit of Petitioner's mental health records and found that the evidence would not have supported a diminished capacity defense.  The PCRA court found, in denying this claim:

> It is clear that trial counsel's strategy at trial was self-defense and sought [Petitioner's] acquittal of all charges.  This strategy as opposed to diminished capacity was designed to effectuate [Petitioner's] best interest - a not guilty verdict as opposed to a third degreed murder conviction.  This court will not second-guess trial counsel's strategy merely because it proved unsuccessful.

Commonwealth v. Johnson, No. 0828,1/1 PCRA (Phila. Cty. Ct. Comm. Pl. Nov. 30, 2005).

In reviewing the PCRA court's decision, the Superior Court, found:

> [Petitioner] maintained that she shot the victim in self-defense as he was striking her.  That is, she denied criminal liability and trial counsel sought an acquittal.  Specifically, trial counsel presented argument and evidence of domestic violence, portraying the victim as the aggressor.  Thus we cannot say that trial counsel did not have a reasonable strategic basis for rejecting a diminished capacity defense.
>
> Moreover, we conclude [Petitioner] has not demonstrated that she was prejudiced by counsel's decision to forgo a diminished capacity defense... [Petitioner] committed the crime at issue with the specific intent to kill.

Commonwealth v. Johnson, 928 A.2d 1124 (Pa. Super. 2007) (table); No. 3477 EDA 2005 (Pa. Super. April 18, 2007), attached as Exhibit "B" to Response.

I do not find this ruling to be either contrary to, or an unreasonable application of, federal law.  If a decision falls within the realm of "strategic decisions" to be made by an attorney, a reviewing court may find whatever decisions that attorney made "to be sufficiently deficient only if he either failed completely to consult with his client, or if the decision was itself inept or incapable of interpretation as sound."  See <u>United States v. Narducci</u>, 18 F. Supp. 2d 481, 493 (E.D. Pa. 1997).  Clearly, defense counsel made a strategic decision to pursue acquittal or a voluntary manslaughter verdict[3] through a defense of self-defense, rather than a diminished capacity defense.  This is a logical decision based on the different sentences imposed for conviction for each these crimes.  Voluntary manslaughter carries a maximum penalty of not more than 10 years imprisonment.  See 18 Pa. C.S. § 1103(2).  Under Pennsylvania law, evidence of diminished capacity can reduce a sentence from first to third degree murder. See <u>Meyers v. Gillis</u>, 142 F.3d 664, 668 (3d Cir. 1998).  Third degree murder carries a maximum penalty of not more than 20 years imprisonment.  See 18 Pa. C.S. § 1103(1). This type of strategic decision cannot be construed as ineffective assistance.

Because Petitioner has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, <u>see</u> <u>Strickland</u>, 466 U.S. at 691, this claim must be denied.  As such, to the extent that Petitioner alleges

---

[3]Under Pennsylvania law, a person commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such, that, if they existed, would justify the killing, but his belief is unreasonable or he is acting under a sudden and intense passion resulting from serious provocation.  See 18 Pa. C.S. 2503(a),(b).

ineffective assistance of appellate counsel for failure to challenge trial counsel's ineffectiveness, it is well established that counsel cannot be deemed ineffective for failing to raise a meritless claim.

Because trial counsel's decision was reasonable based on defense strategy, I conclude that the state courts' conclusion that trial counsel was not ineffective for failing to present a diminished capacity defense is not contrary to United States precedent, nor an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Thus, habeas relief is not appropriate for this claim.

**CONCLUSION**:

After close and objective review of the arguments and evidence, I conclude that Petitioner's petition for writ of habeas corpus is meritless. As a result Petitioner's petition will be denied.

Similarly, because Petitioner's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing, as it would not change the outcome of this matter. See 28 U.S.C. § 2254(e)(2); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("an evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted); see also Campbell v. Vaughn, 209 F.3d 280, 221 (3d Cir. 2000).

An appropriate order follows.